UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RECOVERY DATABASE NETWORK, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CASE NO. 1:16-cv-1923-SEB-MPB ) |
| HOLLY BALOGH, | ) ) |
| Defendant. | ) ) |
| ------------------------------------------------ | ) |
| HOLLY BALOGH, | ) ) |
| Counterclaim-Plaintiff, | ) ) |
| v. | ) ) |
| RECOVERY DATABASE NETWORK, INC., | ) ) ) |
| Counterclaim-Defendant. | ) |

**PLAINTIFF/COUNTERCLAIM-DEFENDANT'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff/Counterclaim-Defendant, Recovery Database Network, Inc. ("RDN"), by counsel, respectfully submits this Memorandum of Law in Support of its Motion for Judgment on the Pleadings.

**I.    INTRODUCTION**

On February 22, 2016, Defendant/Counterclaim-Plaintiff Holly Balogh ("Balogh") left RDN's employment and the parties executed a Separation Agreement two weeks later. Pursuant to the Separation Agreement, Balogh agreed to return to the Company on or before her termination date, all Company property in her possession, and expressly agreed that failure to do

so would be a material breach of the parties' agreements. However, Balogh admits she copied the entirety of her work computer's hard drive onto a USB shortly before her last day of employment and kept it for two months, only returning it after RDN, at significant cost and effort, discovered her actions and demanded the return of its information. Moreover, after copying the entirety of her work computer's hard drive onto a USB drive, she admits she used a program to wipe the hard drive before returning it to RDN—never mentioning she had retained a copy. In fact, Balogh received payments for two months under the Separation Agreement while she knowingly retained RDN's property in her possession (and deprived RDN of its possession). Balogh's actions expressly violated her Employment Agreement, Restrictive Covenant Agreement, and Separation Agreement.

RDN filed a Complaint for Declaratory Judgment seeking a declaration of its rights and/or obligations resulting from the separation of Balogh's employment with RDN. Specifically, RDN seeks a declaration that Balogh is not entitled to separation pay under the Separation Agreement because she knowingly and intentionally breached the terms of her Employment Agreement, Restrictive Covenant Agreement, and Separation Agreement by failing to return company property upon termination of her employment. Along with her Answer, Balogh filed a Counterclaim against RDN for refusing to pay her remaining separation pay. Balogh's Counterclaim is for breach of the Separation Agreement and violation of the Indiana Wage Act, Indiana Code § 22-2-9-1, *et seq.*

Pursuant to Federal Rule of Civil Procedure 12(c), RDN is entitled to judgment on the pleadings because Balogh is not entitled to separation pay under the Separation Agreement, as she breached the express terms of her Employment Agreement, Restrictive Covenant Agreement, and Separation Agreement. Further, the separation pay and benefits Balogh seeks in her

Counterclaim are not wages covered by the Indiana Wage Claims Statute. Therefore, RDN requests that this Court grant its Motion for Judgment on the Pleadings, enter judgment in favor of RDN on its Declaratory Judgment, and dismiss Balogh's Counterclaim with prejudice.

## II.   FACTUAL BACKGROUND

Balogh was hired by RDN on or about July 9, 2012. *See* Complaint for Declaratory Judgment, Doc. 1-1, ¶ 11. On or about October 26, 2015, Balogh and RDN entered into an Employment Agreement. *Id.* at ¶ 12. In October 2015, Balogh was promoted into the position of Chief Operations Officer. *Id.* at ¶ 13. In conjunction with her promotion, and in consideration for signing the Employment Agreement and Exhibit A to the Employment Agreement, her Restrictive Covenant Agreement ("RCA"), RDN employed Balogh and agreed to provide a severance package under certain conditions. *Id.* at ¶ 14. Under the RCA, Balogh agreed to return company property upon termination of her employment for any reason on or before the termination date. *Id.* at ¶ 15. Failure to return company property on or before her termination date is a material breach of Balogh's Employment Agreement and RCA. *Id.* at ¶ 16.

Balogh's employment with RDN was separated on or about February 22, 2016. *Id.* at ¶ 17. On or about March 8, 2016, Balogh and RDN entered into a Separation Agreement and Voluntary Release of All Claims ("Separation Agreement"). *Id.* at ¶ 18. Following Balogh's separation and the parties' execution of the Separation Agreement, RDN reviewed Balogh's RDN-owned computer and discovered several issues, including that a data-wiping program had been used on the computer, automatic back-up files were missing from the computer and several USB drives had been inserted into the computer shortly before she returned it. *Id.* at ¶ 19. A forensic expert independently verified RDN's concerns that Balogh had copies of and/or kept

information from her RDN computer. *Id.* at ¶ 21. RDN notified Balogh of the findings and requested she immediately provide all USB drives inserted into her RDN computer on the day she returned it, among other things. *Id.* at ¶ 22. Only <u>after</u> RDN expressly requested she provide the USB drives, and she had already received two months of severance payments, did Balogh provide the drives, which included a complete copy of her RDN computer's hard drive. *Id.* at ¶ 23. *See also* Ex. A to RDN's Answer to Balogh's Counterclaim, Doc. No. 13. In her correspondence enclosing the USB drives, Balogh admitted she copied the entirety of her RDN computer's hard drive onto the USB drives and retained it after her employment terminated, and further admitted she used a program to wipe data from her work computer before returning it. *See* Ex. A to RDN's Answer to Balogh's Counterclaim, Doc. No. 13.

As part of the Separation Agreement, Balogh agreed that her full compliance with the terms and conditions of the RCA is a material part of the Separation Agreement, and any breach of the RCA constitutes a material breach of the Separation Agreement, which relieves RDN of its severance pay obligations. *Id.* at ¶ 25. After additional forensic review of the USB drives at additional significant cost to RDN, RDN notified Balogh of its confirmation that she had materially breached the RCA and Separation Agreement and that it would accordingly cease payments under the Separation Agreement pursuant to Paragraph 15 of that Agreement. *Id.* at ¶ 26.

Simply stated, Balogh breached the RCA; therefore, RDN is no longer obligated to pay any remaining severance pay to Balogh. *Id.* at ¶ 27. Accordingly, for the reasons set forth herein, this Court should grant RDN's Motion for Judgment on the Pleadings, enter judgment in favor of RDN on its Declaratory Judgment, and dismiss Balogh's Counterclaim with prejudice.

**III.     STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(c) allows for the filing of a motion for judgment on the pleadings at any time "[a]fter the pleadings are closed." *DBS Const. Inc. v. New Equip. Leasing*, 2010 WL 4362815, at *2 (N.D. Ind. Oct. 27, 2010) (quoting Fed. R. Civ. P. 12(c)).  In a case such as this, "when in addition to an answer, a counterclaim is pleaded, the pleadings are closed when the plaintiff serves his reply."  *Id.* (quoting *Flora v. Home Fed. Sav. and Loan Ass'n*, 685 F.2d 209, 211 n.4 (7th Cir. 1982).  Because RDN filed its Answer to Balogh's Counterclaim on September 29, 2016, RDN's Motion for Judgment on the Pleadings is ripe for review at this time.

A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard of review as a motion to dismiss under Rule 12(b)(6).  *See United Consumers Club v. Prime Time Marketing Mgmt.*, 2010 WL 3326745, at *1 (N.D. Ind. Aug. 23, 2010) (citing *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007)).  Unlike a Rule 12(b)(6) motion, however, in considering a Rule 12(c) motion, the court considers all of the pleadings which, in this case, consist of the Complaint for Declaratory Judgment (Doc. 1-1), Balogh's Answer and Counterclaim (Doc. 7), and RDN's Answer to Balogh's Counterclaim (Doc. 13), and any written instruments attached as exhibits.  *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452-53 (7th Cir. 1998).  "A grant of judgment on the pleadings is appropriate where 'it is beyond doubt that the non-movant can plead no facts that would support his claim for relief.'"  *Zurich Specialties London Ltd. v. Village of Bellwood, Ill.*, 2011 WL 248444, at *9 (N.D. Ill. Jan. 26, 2011) (quoting *United States v. Wood*, 925 F.2d 1580, 1581 (7th Cir. 1991)).

In ruling on a motion for judgment on the pleadings, a court is permitted to "consider exhibits that contain materials incorporated by reference to the pleadings and central to the

5

plaintiff's claims." *Mart v. Forest River, Inc.*, 2011 WL 924289, at *3 (N.D. Ind. Mar. 14, 2011) (citing *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994)); *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009); *see also* Fed. R. Civ. P. 10(c) (providing that a "copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes"). Therefore, this Court may consider the Employment Agreement, RCA, Settlement Agreement, and the April 27, 2016 correspondence from Balogh without converting the motion into one for summary judgment. *See Hernandez v. Tapia*, 2010 WL 5232942, at *4, n.5 (N.D. Ill. Dec. 15, 2010) (holding that court could take judicial notice of release agreement between the parties that was attached as an exhibit to the defendant's motion to dismiss when parties did not dispute the authenticity of the agreement, the text of the agreement or that plaintiff's representative executed the agreement) and *Boeckman v. A.G. Edwards, Inc.*, 461 F. Supp. 2d 801, 808 n.6 (S.D. Ill. 2006) (taking judicial notice of release agreement in evaluating Rule 12(c) motion).

## ARGUMENT

### IV. RDN IS NOT OBLIGATED TO PAY SEPARATION PAY DUE TO BALOGH'S BREACH OF CONTRACT.

This Court must enter judgment for RDN pursuant to Rule 12(c) because the Employment Agreement, RCA, and Separation Agreement (collectively "Agreements") that Plaintiff entered into with RDN are valid and enforceable and bar Balogh from receiving the remainder of her separation pay because she materially breached the Agreements by failing to return company property on or before her termination date.

"The elements of a breach of contract action are the existence of a contract, the defendant's breach thereof, and damages." *Gatto v. St. Richard Sch., Inc.*, 774 N.E.2d 914, 920 (Ind. Ct. App. 2002). It is undisputed that RDN and Balogh entered into the Employment Agreement, RCA, and Separation Agreement. It is further undisputed that Balogh copied her

work computer's hard drive and ran a program to forensically wipe that hard drive immediately before returning the hard drive to RDN. *See* Ex. A to RDN's Answer to Balogh's Counterclaim, Doc. No. 13. Still further, it is undisputed Balogh failed to return the copy of her work computer's hard drive to RDN for two months following termination of her employment, a knowing and intentional breach of the Agreements by failing to return company property on or before her termination date.[1] RDN was damaged as a result of Balogh's breach: not only did Balogh keep in her possession (and outside the Company's control) RDN's data for over two months, but she forced RDN to engage the services of a forensic expert to verify its concerns that Balogh had copies and/or kept information from her RDN computer.

Under Indiana law, "[t]he unambiguous language of a contract is conclusive upon the parties to the contract and upon the courts." *Whitaker v. Brunner*, 814 N.E.2d 288, 293 (Ind. Ct. App. 2004). "If the contract language is clear and unambiguous, the document is interpreted as a matter of law without looking to extrinsic evidence." *BKCAP, LLC v. CAPTEC Franchise Trust 2001-1*, 572 F.3d 353, 359 (7th Cir. 2009) (Indiana law). The Agreements' relevant language is unambiguous. Balogh agreed to return company property upon termination of her employment, on or before her termination date:

---

[1] In her Answer and Counterclaim, Balogh repeatedly alleges that her failure to return RDN's property was unintentional. Not only are Balogh's allegations belied by her admissions that she copied and wiped her hard drive immediately prior to returning the (now blank) hard drive to RDN, they are irrelevant. *Patton v. Mid-Continent Sys., Inc.*, 841 F.2d 742, 750 (7th Cir. 1988) ("First, liability for breach of contract is, prima facie, strict liability. That is, if the promisor fails to perform as agreed, he has broken his contract even though the failure may have been beyond his power to prevent and therefore in no way blameworthy."); Restatement (Second) of Contracts § 235 (1981) ("When performance is due, however, anything short of full performance is a breach, even if the party who does not fully perform was not at fault and even if the defect in his performance was not substantial."); 23 Williston on Contracts § 63:8 (4th ed.) (Liability for a breach of contract is, prima facie, strict liability; the promisor promises in effect either to perform or to compensate the promisee for the cost of nonperformance).

> 3.1  Upon termination of employment for any reason, on or before the termination date, Employee will deliver to the Company and not keep in Employee's possession, recreate or deliver to anyone else, any and all devices, books, hardware, security passes, credit cards, records, data, notes, reports, proposals, list, correspondence, specifications, materials, equipment, other documents or property or reproductions of such items developed by Employee pursuant to employment with the Company or otherwise belonging to the Company… ***Failure to comply with this paragraph is a material breach of this Agreement and the Employment Agreement.***

*See* Complaint for Declaratory Judgment, Doc. 1-1, Ex. A, RCA, p. 14 (emphasis added).  It is undisputed Balogh failed to return company property on or before her termination date.  *Id.* at ¶ 23.  In fact, she executed the Separation Agreement and accepted payments for two months under that Agreement under the ruse that she was in compliance with its terms. In actuality, she knowingly kept a complete copy of her work computer's hard drive in her possession—and out of RDN's—until RDN challenged her representations that she had complied with the terms of her Separation Agreement and expressly demanded the return of its company property.  *See* Ex. A to RDN's Answer to Balogh's Counterclaim, Doc. No. 13 (April 27, 2016 correspondence from Balogh admitting that she kept company property in her possession).  In light of Balogh's breach, she is no longer eligible for severance pay and benefits under the terms of the Separation Agreement.  Balogh agreed that <u>full compliance</u> with the RCA is a material part of the Separation Agreement, and <u>any</u> breach of the RCA constitutes a material breach of the Separation Agreement, which relieves RDN of its severance pay obligations:

> 15.  Employee understands and agrees that ***full compliance with the terms and conditions of the RCA are a material part of this Agreement, and any breach of the RCA by Employee constitutes a material breach of this Agreement***, for which Employer is entitled to all available remedies at law and equity, including (but not limited to) relief from its obligations under Paragraph 1 of this Agreement.

8

*See* Complaint for Declaratory Judgment, Doc. 1-1, Ex. B, Separation Agreement, p. 29 (emphasis added). Paragraph 1 of the Separation Agreement provides a severance payment in the amount equal to Balogh's annual base salary for a one-year period. *Id.* at p. 23.

Balogh deliberately made a full copy of her work computer's hard drive (a hard drive that she wiped before returning it to RDN) and kept that copy in her possession, and away from RDN, for months until RDN discovered her actions and demanded she return it. This is a clear breach of the Agreements and the requirement that she return such information on or before her date of termination. In light of Balogh's breach of the Agreements, RDN is no longer obligated to pay severance pay to Balogh. *Johnson v. Scandia Associates, Inc.*, 717 N.E.2d 24, 29 (Ind. 1999) ("…when a party breaches his legal obligation under a contract, liability is strict. Contracts are private, voluntary allocations by which two or more parties distribute specific entitlements and obligations.") Accordingly, RDN is entitled to judgment on the pleadings, and the Court should enter judgment in favor of RDN on its Declaratory Judgment.

V. **THE SEPARATION PAY AND BENEFITS THAT BALOGH SEEKS ARE NOT WAGES COVERED BY THE INDIANA WAGE CLAIMS STATUTE.**

RDN is entitled to judgment on pleadings not only because Balogh breached the express terms and conditions of her Separation Agreement, but also because payments under the Separation Agreement are not, despite Balogh's allegations to the contrary, "wages" under the Indiana Wage Claims Statute. The Indiana Wage Claims Statute requires that employers pay terminated employees all "unpaid wages or compensation" at the next "regular pay day for pay period in which separation occurred." I.C. § 22-2-9-2(a). The statute defines "wages" as "all amounts at which the labor or service rendered is recompensed." I.C. § 22-2-9-1(b). An employer who violates the Statute may be liable for penalties up to twice the amount of unpaid wages and for an employee's costs and attorneys' fees incurred in recovering the underpayment

9

and/or penalty. I.C. § 22-2-9-4(b); I.C. § 22-2-5-2. Balogh's claim for separation pay and benefits does not constitute a wage under the Indiana Wage Claims Statute. Accordingly, RDN is entitled to judgment on the pleadings, and Balogh's Counterclaim must be dismissed.

### A. Indiana and Federal Case Law Establishes that Severance Pay is Not a Wage.

Indiana courts have unequivocally held that severance pay based on a termination provision in an employment agreement does not constitute wages. *Design Indus. v. Cassano*, 776 N.E.2d 398, 403-04 (Ind. Ct. App. 2002) (finding employer was entitled to summary judgment on former employee's claim under the Wage Claims Statute for severance pay consisting of 9-months of salary continuation following termination because such severance was not a covered wage). Notably, in a concurring opinion in *Cassano*, then-Chief Judge Brook stated that the case could be decided based on the fact that any payment of the employee's so-called "salary" after the effective date of his termination would not be payment for labor or services rendered, and therefore would not fall within the statutory definition of wages. *Id*. at 404 (Brook, C.J., concurring).

Following *Cassano*, federal courts in Indiana have held that the pay made available through severance agreements similar to the Separation Agreement offered to Balogh do **not** constitute wages. *See Firestone v. Standard Mgt. Corp. and U.S. Health Services Corp.,* 2005 WL 1799442 (S.D. Ind. July 13, 2005) (Hamilton J.); *Butler v. Chromcraft Revington, Inc., and Kidston,* 2015 WL 4743636 (N.D. Ind. Aug. 4, 2015) (DeGuilio, J.); s*ee also Miller v. Zimmer, Inc.,* 2012 WL 3527873 (N.D. Ind. Aug. 14, 2012) (Simon, C.J.) (payments under post-employment non-compete agreement not wages); *Anthony Buschman v. ADS Corp.,* 782 N.E.2d 423, 430 n.6 (Ind. Ct. App. 2003) (noting that after the appeal in that matter was filed, the court held in *Cassano* that a pre-agreed upon severance package was not a wage).

In *Firestone,* Judge Hamilton granted a motion for judgment on the pleadings on the issue of whether severance pay constituted a wage when the severance payment was contained in an offer letter that provided for a three-year employment contract with one year of severance equal to base salary. Citing the holding and reasoning of *Cassano*, which he recognized as consistent with the Indiana Supreme Court's *Highhouse*[2] line of cases, Judge Hamilton concluded: "There is no set of facts consistent with the pleadings that could support a finding that the severance payment here constitutes wages under Indiana law." *Firestone*, 2005 WL 1799442, at *3-4. Judge Hamilton's sound reasoning in *Firestone* has continued to be expanded upon by the U.S. Court of Appeals for the Seventh Circuit. *See*, *e.g.*, *Thomas v. H& R Block E. Enters.*, 630 F.3d 659 (7th Cir. 2011) (end-of-season compensation was not a wage under Indiana Wage Payment Statute for purposes of requirement that it be paid to employee within ten days of being earned).

In *Miller v. Zimmer, Inc.*, Chief Judge Simon granted an employer's motion to dismiss a claim alleging that payments to be made under a post-employment non-competition agreement constituted "wages" under Indiana law. *Miller*, 2012 WL 3527873, at *5-6. Citing to *Firestone*, *Cassano, Jackson* and other cases, Judge Simon emphasized that when a severance payment is not directly tied to the service performed by the employee for the employer (as in Balogh's case) then the payment cannot be a wage. *Id.* at *5.

**B. Balogh's Severance Pay is Not a Wage.**

In *Butler v. Chromcraft Revington, Inc., and Kidston,* 2015 WL 4743636 (N.D. Ind. Aug. 4, 2015), Judge DeGuilio closely analyzed whether non-payment of severance pay could give rise to a wage claim and dismissed the count of the complaint asserting that claim because

---

[2] *Highhouse v. Midwest Orthopedic Institute, P.C.*, 807 N.E.2d 737 (Ind. 2004).

11

the severance did not constitute a wage under the Indiana Wage Claims Statute. Citing to *Highhouse*, *Thomas* and *Firestone*, Judge DeGuilio examined the four factors used to determine whether compensation constitutes a "wage" under Indiana law, which are whether the payments: (1) are linked to a contingency; (2) relate directly to the time an employee works; (3) are paid on a regular periodic basis for regular work done by the employee; and (4) are paid in addition to other, regular wages. *Butler*, 2015 WL 4743636, at *3 (citing *Thomas*, 630 F.3d at 664). Analyzing Balogh's claims under those same factors leads to the inescapable conclusion that her severance pay under the Separation Agreement is not a wage.

**1. *Balogh's severance pay is not a wage because it is linked to contingencies.***

As to the first factor, Judge DeGuilio found the severance payments were linked to contingencies, which weighed heavily against finding they were a wage. *Butler*, 2015 WL 4743636, at *4. Some of those contingencies are the same as in this case. For example, Balogh was required to execute a release of claims to receive severance and was required to follow the terms of the Separation Agreement containing that release. Those terms specifically included compliance with Balogh's RCA. Indeed, Balogh expressly affirmed in her Separation Agreement that full compliance with the terms and conditions of the RCA are a material part of the Separation Agreement, and any breach by Balogh would constitute a material breach of the Separation Agreement that would entitle the Company to all available remedies at equity and law, including but not limited to relief from any obligation to pay severance. *See* Complaint for Declaratory Judgment, Doc. 1-1, Ex. B, Separation Agreement, p. 29, ¶¶ 14-15. Accordingly, this factor weighs against a finding that the severance payments in this case are a wage.

### 2. *Balogh's severance pay is not a wage because it is not directly related to the time she worked.*

As to the second factor, Judge DeGuilio found that the severance payments were not directly related to the time the employee worked. *Butler*, 2015 WL 4743636, at *5. In *Butler*, the plaintiff had at least a colorable argument that there was some connection because his agreement provided for a one-time increase in the amount of severance once the plaintiff had worked for the employer for more than one year. *Id.* Nevertheless, Judge DeGuilio rejected that argument, noting it created only a loose connection between the individual's length of service and amount of severance. *Id.*

In this case, there is nothing that creates even a loose connection between the amount of severance—one year of Balogh's base salary—to anything related to Balogh's time worked or length of service. Balogh's date of hire was July 9, 2012, so she had been employed for slightly less than three years at the time her employment was separated on February 16, 2016. And she signed her employment agreement on October 26, 2015, so she was not even working under that employment agreement for a full year at the time of her separation. Balogh's Employment Agreement provided for 12 months of severance, with no increase or change based upon years of service. In notable contrast, however, the 12 months of severance do correspond to the exact time period during which Balogh is prohibited from engaging in a competing business and soliciting the Company's customers. *See* Complaint for Declaratory Judgment, Doc. 1-1, Ex. A, RCA, pp. 15-16, ¶¶ 7-8. Citing to *Miller*, Judge DiGuilio also found this to be significant and to support a finding that the severance was not a wage. *Butler*, 2015 WL 4743636, at *5. Accordingly, this factor also weighs against a finding that the severance payments in this case are a wage.

### 3. *Balogh's severance pay is not a wage because it is not paid on a regular periodic basis for regular work done by her.*

Judge DeGuilio next found that the third factor also weighed against a finding that the payments were wages, because they were not paid on a regular periodic basis for work performed by the employee:

> The payments could only accrue after Mr. Butler's employment with Chromcraft had already terminated, so they could not be paid on a regular periodic basis during his employment. Likewise, since they only arise after his employment and are determined primarily by the manner in which his employment terminates (in addition to the other factors noted above), they are not tied to Mr. Butler's performance of work for Chromcraft. To the contrary, as in *Miller,* "it is exactly the opposite: the[ ] payments accrued *after* [Mr. Butler's] tenure and were connected to the fact that he was *no longer performing* work. The whole point of the payments is that he was no longer employed by [Chromcraft] or anyone else...." 2012 WL 3527873, at *5

*Butler*, 2015 WL 4743636, at *6.

Judge DeGuilio's comments regarding the third factor are equally applicable here- Balogh's payments only arose after her employment, were determined in large part by the way her employment terminated, were not tied to her performance of work for RDN, and were in fact exactly the opposite; they accrued after her tenure and are connected to the fact she is no longer performing work for RDN. *See also Cassano*, 776 N.E.2d at 404 (Brook, C.J., concurring) (any payment of the employee's so-called "salary" after the effective date of his termination under the parties' severance agreement would not be payment for labor or services rendered, and therefore would not fall within the statutory definition of wages); *Wank v. Saint Francis College*, 740 N.E.2d 908, 912 (Ind. Ct. App. 2000) ("Wages are 'something akin to the wages paid on a regular periodic basis for regular work done by an employee....'"); *City of Clinton v. Goldner*, 885 N.E.2d 67, 76 (Ind. Ct. App. 2008) (employee did not work during the time period between October 24, 2005 and April 12, 2006, so the Wage Payment Statute is not

applicable); *New Frontiers, Inc. v. Goss*, 580 N.E.2d 310, 311-12 (Ind. Ct. App. 1991) (damages awarded to former employees for failure to give them 30 days' notice of termination as required by employment contracts were not "wages" within the meaning of I.C. 22-2-5-2; "[t]he statute applies only to wages which have already been earned and are due and owing at the time of discharge"); *see also* I.C. § 22-2-9-1(b) ("The term 'wages' means all amounts <u>at which the labor or service rendered is recompensed</u>, whether the amount is fixed or ascertained on a time, task, piece, or commission basis, or in any other method of calculating such amount.") (emphasis added). Accordingly, the third factor also weighs against a finding that the severance payments in this case are a wage.

### 4. *Balogh's severance pay is not a wage because it accrued only after her employment terminated.*

Finally, Judge DeGuilio found that the fourth factor also weighed against a finding that the severance payments were wages. Although the severance pay in *Butler* was not gratuitous, Judge DeGuilio recognized that fact was not dispositive. *Butler*, 2015 WL 4743636, at *6 (citing *Cassano*, 776 N.E.2d at 404). Rather, the key was that the plaintiff in *Butler* received a regular salary and other compensation during his employment with the employer, and the severance payments only accrued <u>after</u> the individual's employment terminated. *Butler*, 2015 WL 4743636, at *6. Once again, the facts in the instant case are precisely the same – Balogh's severance payments accrued after her employment terminated. Accordingly, the fourth factor, like the three factors before it, weighs against a finding that the severance payments in this case are a wage.

In summary, both the *Firestone* and *Butler* cases address factual allegations at the pleadings stage that are largely identical to the factual allegations made by Balogh. In each of those cases, federal judges in Indiana found that the severance pay at issue was not a "wage"

under Indiana law and dismissed the former employee's wage claims. This case is no exception, and the same reasoning applies here. The separation pay and benefits that Balogh seeks under her Separation Agreement are not a wage as a matter of law. Therefore, even if Balogh was entitled to separation pay and benefits under the terms of the Separation Agreement (she is not), such separation pay and benefits are not subject to the Indiana Wage Claims Statute. RDN is entitled to judgment on the pleadings with regard to Balogh's Counterclaim under the Indiana Wage Claims Statute.

## VI. CONCLUSION

For the above reasons, RDN respectfully requests that the Court declare that Balogh is not entitled to the remainder of her separation pay pursuant to the terms of the Separation Agreement and dismiss Balogh's Counterclaim in its entirety and with prejudice.

Respectfully submitted,

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.


By: */s Theresa R. Parish*
    Robert F. Seidler Atty. No. 28432-29
    Theresa R. Parish, Atty. No. 27996-49
    111 Monument Circle, Suite 4600
    Indianapolis, IN 46204
    Telephone: 317.916.1300
    Facsimile: 317.916.9076
    Email: r*obert.seidler@ogletreedeakins.com*
         *theresa.parish@ogletreedeakins.com*

Attorneys for Recovery Database Network, Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 29, 2016, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's CM/ECF system.

                        Andrew M. McNeil (#19140-49)
                        Mark A. Wohlford (#31568-3)
                        BOSE McKINNEY & EVANS LLP
                        *AMcNeil@boselaw.com*
                        *MWohlford@boselaw.com*


                        */s Theresa R. Parish*


OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
111 Monument Circle, Suite 4600
Indianapolis, IN  46204
Tel:  317.916.1300
Fax:  317.916.9076

                                                                                 26359367.1